UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

HENRY JUMONVILLE, ENOUL
JUMONVILLE and JUMONVILLE
LANDS, LLC

CIVIL ACTION

VERSUS

NO. 3:10-CV-00393

HERCULES, INC., GEORGIA GULF
CORPORATION, GEORGIA GULF
CHEMICALS AND VINYLS, LLC,
ASHLAND, INC., ASHLAND OIL
COMPANY, AMERICAN PETROFINA,
INC., HERCOFINA, INTERNATIONAL
MINERALS & CHEMICAL
CORPORATION and ALLEMANIA
CHEMICAL COMPANY

**RULING ON MOTION FOR SUMMARY JUDGMENT**

This matter is before the Court on a motion by defendants, Hercules Incorporated ("Hercules"), Georgia Gulf Corporation and Georgia Gulf Chemicals & Vinyls, LLC (collectively, "Georgia Gulf"), Ashland, Inc., TOTAL Petrochemicals USA, Inc., and Mallinckrodt US, LLC ("Mallinckrodt"), for summary judgment (doc. 32). Plaintiffs, Henry Jumonville, Enoul Jumonville, and Jumonville Lands, LLC, oppose the motion, and defendants have responded to the opposition. Jurisdiction is based on 28 U.S.C. § 1332. There is no need for oral argument and the matter is now submitted.

1

## BACKGROUND

In 1970, Hercules drilled a waste disposal well on property located in Iberville Parish "within the immediate vicinity" of plaintiffs' property. That same year, Georgia Pacific Corporation drilled a second disposal well on property in Iberville Parish also located "within the immediate vicinity" of plaintiffs' property. In 1982, the well drilled by Hercules was plugged and abandoned, and three years later, in 1985, the Georgia Pacific well also was plugged and abandoned. With the exception of Georgia Gulf Corporation and Georgia Gulf Chemicals & Vinyls, LLC (collectively "Georgia Gulf"),[1] each of the defendants in this suit operated one or the other of the wells before they were plugged and abandoned in the early 1980s.

Plaintiffs contend that toxic wastes from the wells migrated into the aquifer underlying plaintiffs' property. Plaintiffs assert that this migration caused contamination of the groundwater and soils of their property with unhealthy levels of arsenic. Plaintiffs filed suit on February 18, 2010, in the Eighteenth Judicial District Court for the Parish of Iberville, Louisiana.

Prior to plaintiffs' suit, multiple lawsuits were filed in April of 2001, in Iberville Parish. These suits included class actions in which allegations were made that are identical to the allegations made in plaintiffs' petition. Many of those cases were consolidated. On May 4, 2006, the Eighteenth Judicial District

---

[1] Georgia Gulf Corporation and Georgia Gulf Chemicals & Vinyls, LLC , were created after the wells ceased production.

2

Court certified a settlement class ("the *Oldham* class"), in the consolidated cases, which was subject to the court's review and approval of the parties proposed settlement notice plan. On May 7, 2007, the court approved the notice plan and ordered extensive publication of the class action settlement no later than May 23, 2007. Accordingly, the court approved a legal notice entitled "Class Action Information Packet and Legal Notice" which was published in May and June of 2007 in five publications, including: *The Advocate Daily Newspaper*, the *Donaldsonville Chief, Post South, Times Picayune,* and *The Daily Advertiser.*

The Jumonville property at issue is located in Iberville Parish "in the immediate vicinity" of the Allemania Chemical Company ("Allemania")[2] and Georgia Gulf sites. Plaintiff, Henry Jumonville, has managed the property since 1999. Additionally, Henry's brother, John C. Jumonville, Jr. lived on the property during the class action litigation, which was pending from 2001 until 2008.

Defendants argue that the claims asserted in plaintiffs' petition of February 18, 2010, are prescribed. In support of their motion for summary judgment, defendants note that the applicable prescriptive period for tort actions concerning property is one year, and begins to run from the date the owner acquired or should have acquired knowledge of the damage. Defendants contend that plaintiffs acquired constructive knowledge of the damage, at the very latest, on May 23, 2007, which was the court-ordered date for publication of the *Oldham*

---

[2] Allemania Chemical Company was a joint venture between Ashland Chemical Company, a division of Ashland Oil, Inc. and International Minerals & Chemicals Corporation. Allemania acquired an interest in the facility that was originally owned by Hercules. The disposal well drilled by Hercules in 1970 was operated by Allemania from 1979 until it was plugged and abandoned in June of 1982.

3

class settlement plan. Plaintiffs, however. assert that the doctrine of contra non valentum applies because plaintiffs were not aware of the facts upon which the present action is based until April of 2009, when they were informed by their attorney, John Dupont, of an arsenic problem in the area.

## LAW AND DISCUSSION

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P.56(c). In determining whether the movants are entitled to summary judgment, the court views facts in the light most favorable to the non-movants and draws all reasonable inferences in their favor. *Coleman v. Houston Independent School District*, 113 F.3d 528 (5th Cir. 1997).

### I. Prescription

Delictual actions are subject to a liberative prescriptive period of one year. La.Civ.Code art. 3492. "When damage is caused to immovable property, the one year prescription commences to run from the day the owner of the immovable acquired, or should have acquired, knowledge of the damage." La.Civ.Code art. 3493. Louisiana courts have firmly held that a prescriptive period will begin to run even if the injured party does not have actual knowledge of the facts that would entitle him to bring a suit, as long as there is constructive knowledge of same. "Constructive knowledge is whatever notice is enough to excite attention and put

4

the injured party on guard and call for inquiry." *Campo v. Correa*, 828 So. 2d 502, 510-511 (La. 6/21/02). In determining whether plaintiffs had constructive knowledge sufficient to commence the tolling of the prescriptive period, the ultimate issue is the reasonableness of the action or inaction in light of plaintiffs' education, intelligence, and the nature of the defendants' conduct. *Griffin v. Kinberger*, 507 So. 2d 821 (La. 1987).

Plaintiffs contend that the doctrine of contra non valentum applies in this case. Louisiana Civil Code article 3467 provides that "prescription runs against all persons unless an exception is established by legislation;" however, courts sometimes apply the jurisprudential doctrine of contra non valentum, which prevents the running of prescription in four factual situations:

> (1) where there was some legal cause which prevented the courts or their officers from taking cognizance of or acting on the plaintiff's action;
>
> (2) where there was some condition coupled with the contract or connected with the proceedings which prevented the creditor from suing or acting;
>
> (3) where the debtor himself has done some act effectually to prevent the creditor from availing himself of his cause of action; or
>
> (4) where the cause of action is neither known nor reasonably knowable by the plaintiff even though plaintiff's ignorance is not induced by the defendant.

*Plaquemines Parish Com'n Council v. Delta Development Co., Inc.* 502 So. 2d 1034 (La. 1987). When the case involves property damages, the fourth category also known as the "discovery rule" will apply. *Id.*

In the present case, plaintiff, Henry Jumonville, admitted that he was aware of claims of arsenic contamination in the groundwater of the surrounding area before this suit was filed. (Henry Jumonville Deposition, doc. 32, p. 34.) However, Mr. Jumonville testified that he "always thought the problem was up toward the Dow area." *Id.* His testimony suggests that he did not have actual knowledge that the contamination had affected the subject property. However, the issue is whether his knowledge of contamination in the surrounding areas was sufficient to "excite attention" such that plaintiffs had constructive knowledge of their potential claim against defendants.

In *Marin v. Exxon Mobil Corp.*, 48 So.3d 234 (La. 10/19/10), the Louisiana Supreme Court determined that the doctrine of contra non valentum did not apply to prevent accrual of the plaintiffs' claim against Exxon where the plaintiffs should have acquired constructive knowledge of their potential claim years in advance of the suit. The case involved two tracts of property in St. Mary Parish upon which Exxon conducted oil and gas production and transportation activities. *Id.* at 240. In addition to the oil and gas activities, the properties were used for the cultivation of sugarcane.

Pursuant to leases on the properties, Exxon installed and operated oil and gas facilities, which consisted of separators, oil gathering systems, and pits used for skimming oil from saltwater. The water produced from the pits was discharged into a nearby waterway. By 1958, farmers on the Marin property were aware that

sugarcane growth had been affected on and near former unused pit sites. A representative of the family stated that, "[w]e had something in the field that wouldn't allow us to grow cane in spots. We didn't know what it was, though." *Id.* Between the years of 1988-1990, the plaintiffs made demands on Exxon to clean up the property so that sugarcane would continue to grow. Exxon subsequently closed the pits on the two properties pursuant to a statewide order and attempted to remediate the pits. Exxon eventually compensated the plaintiffs for their sugarcane loss as a result of an agreement entered into by the parties. However, it wasn't until February of 2003 that the plaintiffs had an expert conduct tests on the property, which established conclusively that the groundwater was contaminated with arsenic. The plaintiffs filed suit in November of 2003. *Id.* at 241.

The Court reversed the lower court decision that the doctrine of contra non valentum applied, noting that [t]he lower courts have interpreted the fourth category of contra non valentum too broadly. As we have stated, 'the doctrine should apply only in exceptional circumstances.'" *Id.* at 262 (quoting *Renfroe v. State ex rel Dept. of Transp. and Development,* 809 So.2d 947, 953 (La.2002) (citing La.C.C. art. 3467, Official Revision Comment (d); *State Through Div. of Admin. v. McInnis Bros. Const.,* 701 So.2d 937, 940 (La.1997),

The Court noted that a plaintiff will be deemed to know what he could have learned through reasonable diligence. The plaintiffs in *Marin* testified that they

7

were aware that sugarcane had not grown on the property in certain areas by the 1980s. *Id.* at 247. The family's representative also testified that he knew some of the pits had been closed and that sludge remained at the bottom of the pits. Yet, despite this knowledge, plaintiffs failed to file suit until 2003. As a result, the Court held that the doctrine of contra non valentum was inapplicable. *Id.* at 262.

The *Marin* case differs marginally from the case at bar. Here, the undisputed facts establish for purposes of the motion that plaintiffs did not have actual knowledge of physical damage to their property. Henry Jumonville testified that plaintiffs had not experienced any problems on the property and were ignorant of their potential claim until John Dupont mentioned the problems with arsenic contamination in the area. (Henry Jumonville Deposition, doc. 32, p. 34). Moreover, plaintiffs lease a portion of their property to Curtis Carbo for the purpose of farming sugarcane, and Mr. Carbo has never reported to Mr. Jumonville "any problems with his sugarcane crops that may [have been] related to arsenic contamination on the property." *Id.*

Despite the lack of physical signs of contamination on plaintiffs' property, however, the Court concludes that plaintiffs acquired constructive knowledge of their claim by virtue of the 2007 *Oldham* class publications. In the *Oldham* class settlement, the legal notice ordered by the court included the following class definition:

> All persons and entities who allege, alleged, <u>and/or could allege that they sustained, or may in the future sustain</u>, bodily and or/personal injury, loss, property damage, and/or other damage under any

8

> theory of recovery . . . as a result of (a) any conduct or activities at and/or on the Allemania Chemical Company site, located in Iberville Parish, Louisiana, and/or (b) exposure to and/or consumption of water from (i) the Georgia Gulf Chemicals and Vinyls, LLC ("Georgia Gulf") facility in Plaquemine, Iberville Parish, Louisiana, and/or (ii) the aquifers under the Allemania site and/or the Georgia Gulf facility.

(Doc. 32, Ex. D, p. 5 (emphasis added)).

The undisputed facts establish that the alleged tortuous conduct occurred between the years of 1970 and 1985, and was disclosed to the public in 2000. That conduct and the resulting damages were litigated in multiple individual lawsuits and class actions filed in 2001 by over 2,500 people owning property in the vicinity of plaintiffs' property. The litigation spanned over six years, and in May and June of 2007, the court-approved "Class Action Information Packet and Legal Notice" was published in local publications. The Court also notes that Henry Jumonville has admitted that he was aware of arsenic contamination in the area and that he had had heard talk of it "going back several years" (doc. 32-12, pp. 9-10).

Though plaintiffs may not have had actual notice of their potential claims over a year in advance of filing suit, in light of the extensive and prolonged litigation of the issue by other landowners in the immediate vicinity of the subject property, the published notices produced in the course of that litigation, and Henry Jumonville's admission that he had actual knowledge of arsenic contamination in the area and had heard of the problem several years earlier, the Court concludes that plaintiffs had constructive knowledge of their claims well

9

over a year prior to the filing of the present suit. Thus the doctrine of contra non valentum did not prevent the running of prescription.

Accordingly, the Court concludes that no genuine dispute of material fact exists and that the claims asserted in this matter prescribed prior to February 18, 1010, the date on which plaintiffs filed the present suit.

## CONCLUSION

For all the foregoing reasons, the motion by defendants for summary judgment (doc. 32) is **GRANTED** insofar as defendants seek dismissal of all claims with prejudice, and the motion is **DENIED** otherwise.

Judgment shall issue accordingly.

Baton Rouge, Louisiana, June 4, 2012.

BRIAN A. JACKSON, CHIEF JUDGE
UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA